# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

REBECCA COOPER for
JEREMY D. COOPER, a minor

      Plaintiff,

vs.                                      Civil No. 99-639 BB/WWD

KENNETH S. APFEL, Commissioner
of Social Security Administration,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.   This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed February 15, 2000 **[docket # 7]**. The Commissioner denied Plaintiff's request for Supplemental Security Income ("SSI") benefits. Plaintiff, who was ten years old at the time of the hearing, alleges a disability which commenced January 1, 1994, due to attention deficit hyperactivity disorder ("ADHD"). The application for benefits was filed on behalf of Plaintiff by his mother.

    2.   The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") likewise denied the applications, concluding that Plaintiff is not disabled. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3.   The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

4.   Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) that the ALJ's decision is erroneous because it is not supported by substantial evidence in the record as a whole in that his impairment was functionally equivalent to a listed impairment; and (2) the ALJ disregarded the totality of the evidence reflecting the disabling ADHD and the hearing and asthma impairment.

5.   An individual under the age of 18 is considered disabled if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(C) (as amended by P.L. 104-193, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, § 211), (superseding Sullivan v.Zebley, 493 U.S. 521 (1990)).

6.   If the child's impairment or impairments do not meet, medically equal, or functionally equal in severity a listed impairment, the child is not disabled.  See  20 C.F.R. § 416.924(d)(2)(1997).  An impairment is functionally equivalent to a listed impairment if a claimant has an extreme limitation in one area of functioning or marked limitations in two or more areas of functioning.  20 C.F.R. § 416.926a(b)(2). The areas of functioning to be addressed in a finding of functional equivalence include: cognition/communication; motor, social; personal; and

concentration, persistence or pace. 20 C.F.R. § 926a(c)(4).

7. Plaintiff ("Jeremy") takes Ritalin daily to help control symptoms of ADHD. His mother and grandmother testified at the hearing. Jeremy's mother told the ALJ that she cannot read or write, has mental impairments and receives SSI benefits herself. Tr. at 33-34. Plaintiff's grandmother accompanies him and his mother to doctor's appointments. Tr. at 34.

8. Plaintiff's grandmother testified that Jeremy has a special teacher for reading and does "pretty good" in math. She told the ALJ that Jeremy takes Ritalin at the same time and in the same way every morning and that his teachers have commented that his behavior is "fine" earlier in the day but becomes "unruly" later when the medication wears off. Tr. at 35.

9. According to the grandmother, Jeremy also has breathing problems once or twice a week due to asthma, but the problem has never required a visit to the hospital. Plaintiff did see Dr. Guttieras who prescribed an inhaler for him. Tr. at 36. Jeremy was also diagnosed with chronic otitis adhesive otitis media, leaving him with a moderate hearing loss in his left ear, and a mild loss in his right ear. Tr. at 211. Hearing aids were not suggested. Surgery was discussed, but rejected because Plaintiff's ear drum was pushed back too far in the canal for surgery to have any beneficial effect. Tr. at 35.

**First Alleged Error**

10. Plaintiff alleges that the ALJ's decision is erroneous because it is not supported by substantial evidence in the record as a whole in that his impairment was functionally equivalent to a listed impairment. He specifically bases the error on the contention that the ALJ disregarded teachers' observations, that the ALJ improperly discounted witness testimony and that the ALJ should have ordered a consultative examination to inquire into Plaintiff's changes in his school

work and behaviors.

11. In March 1998, three of Jeremy's teachers filled out reports at the request of the Social Security Administration regarding his abilities in functional categories. Ms. Dunagan stated that Plaintiff had marked limitation in the cognitive/communication area and extreme limitations in both social and concentration, persistence and pace categories. Tr. at 111-12. A second report stated that Plaintiff had marked limitations in both cognitive and social areas and extreme limitation in concentration, persistence and pace. Tr. at 113-14. A third teacher, Ms. Gregory, reported marked limitations in both the areas of cognitive/communication and concentration, persistence and pace. Tr. at 115-16.

12. Plaintiff urges the Court to find the ALJ's decision in error because it disregarded all the observations of Jeremy's teachers for the 1997-98 school year. I find that Plaintiff's position is well-taken and that this case warrants remand for the reasons which follow.

13. The ALJ listed various reports contained in the record, including those dated March 1998 from the teachers. Tr. at 14. However, his actual findings did not specifically reference these reports except for Dr. Longfield's reports on domains analysis, which stated that Plaintiff had no limitation in the cognitive/communicative, motor social or personal domains, and only less than moderate limitation in the area of concentration, persistence and pace. Tr. at 182. The doctor also reported the Plaintiff had a slightly reduced attention/distractibility and slight underachievement. Tr. at 183. The ALJ concluded that Jeremy had either slight, moderate, or no impairments in the functional categories.

14. Defendant argues that ALJ did not err in not relying on the three teachers' reports from March 1998 because they constitute lay evidence and as such are not objective medical

findings. Defendant's contention is not well-taken given the particulars of this case. While a functional equivalence analysis necessarily involves a consideration of the medical evidence, 20 C.F.R. § 416.924(f)(1), the regulations also provide that "[e]ducational and other intervention programs may be important sources of evidence about your functioning. . . ." § 416.924(f)(2).

15. In addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). (citing Zblewski v. Schweiker, 732 F.2d 75, 79 (7th Cir. 1984) ("a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position"). Here, because the focus of the functional analysis was Plaintiff's ability to function in school, the teacher's reports deserved the ALJ's consideration. At the very least, the ALJ should have discussed why he chose not to rely on these reports.[1]

16. Defendant further argues that the teacher's reports are conclusory and conflict with the medical evidence, pointing to the progress notes by a masters-level therapist, Gary Roberto, M.A., as evidence that Jeremy's impairment was not of the severity presented by the teachers. However, a review of this other evidence, Tr. at 170-78, reveals that the therapist's remarks about Plaintiff's ADHD impairment were not based on documentary evidence or objective testing, but rather on observation of the Plaintiff's behavior and conduct during the therapy sessions -- no more "objective" as medical evidence than the teacher's reports.

---

[1] The ALJ acknowledged that "three teachers all say the same thing" regarding Jeremy's conduct in getting into fights and failure to pay attention in class. Tr. at 19. Yet in his decision, the ALJ did not acknowledge the fact that these teachers also made determinations on their reports which would amount to a listed impairment, or otherwise discuss why he discounted the teachers' conclusions.

17. Defendant's position that Plaintiff's impairment is not severe, and in fact showed signs of improving, is based largely on Mr. Roberto's progress notes. These notes, however, refer to comments made by Plaintiff's mother and grandmother concerning whether or not the Ritalin was helping Jeremy act out less and reduce his displays of hyperactivity or anger. They were also made during intervals of time much shorter than the periods of time which Jeremy spent in school under the observation of his teachers. See, e.g., Tr. at 177-78, 175-76 (no displays of hyperactivity or anger); Tr. at 171 (acting out less); Tr. at 136 ("doing fine"); Tr. at 131 (medication helping Jeremy to "stay calm"); Tr. at 192, 196 (Ritalin continued to work well).

18. While the ALJ was justified in considering Mr. Roberto's notes, the failure to consider the 1998 teachers' reports warrants remand. Where the counselor's notes are from 1995, the teachers' reports are decidedly relevant to the alleged period of disability and appear inconsistent with some of the remarks made by Plaintiff's mother and grandmother to Mr. Roberto.[2] Moreover, another of Jeremy's teachers completed a questionnaire in 1997 which remarked that distractibility and difficulty completing tasks were "small problems." Tr. at 102.

19. Notwithstanding statements made to Mr. Roberto that Plaintiff's behavior was improving, the record contains evidence that when the Ritalin wore off later in the day, "minor problems" ensued, such as "hitting and kicking others when [Plaintiff] became angry." Tr. at 170. In fact, Jeremy's disruptive behavior at the hearing caused the ALJ to interrupt the proceeding at least twice. See Tr. at 33, 40 ("Would somebody make him sit down?"). The record does not

---

[2] Plaintiff filed an application for benefits in January 1997. The need for remand is further underscored by inconsistency between the 1995 notes of Mr. Roberto and the later teachers' reports. See Webster v. Chater, (Table, text in WL), 1996 WL 494315 (10th Cir. Okla.) (holding that ALJ did not err in considering medical evidence prior to as well as subsequent to, alleged date of onset, where former evidence supported ALJ's decision).

support Defendant's contention that Plaintiff's impairment is controlled by medication <u>See</u> <u>Pacheco v. Sullivan</u>, 931 F.2d 695, 698 (10th Cir. 1991)(impairment that can reasonably be remedied or controlled by treatment cannot support a finding of disability).

20.    Accordingly, I find that the ALJ improperly discounted the 1998 teachers' reports, or at the very least, failed to explain why he chose not to rely on this evidence. On remand, the ALJ should order a consultative psychological or psychiatric examination in order to inquire into Plaintiff's changes in his school work and behaviors.

**Second Alleged Error**

21.    Plaintiff alleges that the ALJ disregarded the totality of the evidence reflecting the disabling ADHD and the hearing and asthma impairment.  My findings above address sufficiently the first portion of this allegation concerning Plaintiff's ADHD.  These remaining findings thus concern Jeremy's hearing and asthma impairment.

22.    Plaintiff attributes error on the part of the ALJ in disregarding the "totality of the evidence" reflecting these two impairments, but fails to cite to any specific evidence contained in the record to support this contention.

23.    Plaintiff contends that the issue of asthma was raised at the hearing but not considered by the ALJ other than by a passing reference in the decision.  <u>Tr. at 18</u>.  On the contrary, at the hearing the ALJ asked Jeremy's grandmother specific questions about Jeremy's problems with asthma.  <u>Tr. at 36</u>.  However, Plaintiff was never taken to the hospital because of his asthma attacks.  He saw Dr. Guttieras and was prescribed an inhaler.  <u>Id</u>.  The record contains no evidence that the impairment was of a severity to be further considered by the ALJ.  Thus, the ALJ did not err in not ordering a consultative examination regarding asthma.

24.   Similarly, the ALJ noted that Plaintiff does have a hearing loss, Tr. at 13, but did not further consider this impairment.  The record indicates that surgery for Jeremy ("cartilage tympanoplasty") was considered but rejected.  Tr. at 211.  A doctor recommended that Jeremy sit in the front of his class in order to hear better and also recommended that he be fitted with an audio trainer.

25.   Both recommendations were followed.  Tr. at 103.  According to Ms. Lopez, Jeremy's second-grade teacher, these measures "seemed to have helped him."  Id.  Plaintiff cites to no other evidence in the record, nor do I find any, which suggests that the ALJ erred in his findings on these two impairments.  A claimant has the initial burden of proof to show he is disabled.  Flint v. Sullivan, 951 F.2d 264, 267 (10th Cir. 1991).  Plaintiff failed to do so on this issue.

26.   In sum, I find that (1)  the ALJ's decision is erroneous because it is not supported by substantial evidence in the record as a whole in that he discounted the 1998 teachers' reports on Jeremy's functional categories; and (2) the ALJ sufficiently considered the evidence in the record relating to Plaintiff's hearing and asthma impairments.

## Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 7]** be granted and that this cause be remanded to the Commissioner in order for the ALJ to properly consider the 1998 teachers' reports on Plaintiff's abilities in the functional categories in order to determine whether Plaintiff's ADHD constitutes a functional equivalent of a listed impairment. On remand, if the ALJ chooses not to rely on this evidence in making his determination, then the ALJ should discuss reasons for discounting this evidence.  Also on remand, the ALJ should obtain

a psychiatric or psychologic consult concerning the ADHD impairment. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).


_____
UNITED STATES MAGISTRATE JUDGE